VALENTINE BLISS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 53422. Promulgated July 27, 1932.

*C. B. Comegys, Esq.*, for the petitioner.
*A. Pierce, Esq.*, for the respondent.

## OPINION.

BLACK: The question presented to us for decision is whether the profits made by the sale of certain corporate stocks during the taxable year 1928, the legal title to which was vested in a trustee under a trust created by the petitioner, should be regarded as part of the income of the petitioner and taxable to him, or should be regarded as the income of the trust and taxable to it. The provisions of the Revenue Act of 1928 applicable to the present proceeding are printed in the margin.[1]

Petitioner admits, and it has been so stipulated by the parties, that the income from the dividends received by the trust in 1928 was taxable to him because the trust instrument required that such income be distributed to him by the trustee in periodical installments, at such periods as from time to time he might designate in writing. Petitioner contends, however, that the profits resulting from the sale of the stock were not taxable to petitioner because the trust instrument specifically provided that all gains and profits resulting from sales of the corpus should in all respects be treated and considered not as a portion of the income of said trust estate, but as a part and parcel of the principal; that this principal or corpus was definitely and finally disposed of, so far as petitioner is concerned, by the trust instrument; and that as to him, the trust was irrevocable.

The respondent contends that, although the trust instrument provides that it is irrevocable as to the settlor (petitioner herein), nevertheless the trustee is given the power to revoke, and that, inasmuch as the trustee is the North Scranton Bank and Trust Company, of which petitioner is president and one of the directors, the effect is the same as giving the petitioner the power to revoke in conjunction with a person not a beneficiary of the trust, and to revest in himself title to the corpus of the trust and, hence, comes clearly within the provisions of the statute which we have quoted in the margin. The respondent cites no authority either of the Board or the courts to support his contention. The authorities cited by petitioner in support of his position are not directly in point and are only useful by analogy. We have found no decided case, either by the Board or the courts, which is directly in point.

[1] [SEC. 166. *Revocable Trusts.*] Where the grantor of a trust has, at any time during the taxable year, either alone or in conjunction with any person not a beneficiary of the trust, the power to revest in himself title to any part of the corpus of the trust, then the income of such part of the trust for such taxable year shall be included in computing the net income of the grantor.

[SEC. 167. *Income for Benefit of Grantor.*] Where any part of the income of a trust may, in the discretion of the grantor of the trust, either alone or in conjunction with any person not a beneficiary of the trust, be distributed to the grantor or be held or accumulated for future distribution to him, * * * such part of the income of the trust shall be included in computing the net income of the grantor.

Numerous cases deal with situations where the settlor of a trust reserved the right unto himself in conjunction with the trustee to revoke the trust, but we have found no case where, as in the instant proceeding, the trust instrument provides that it is irrevocable by the settlor but may be revoked by the trustee acting alone, and without consulting either the settlor or the beneficiaries of the trust. This, it seems to us, is quite unusual, but, though quite unusual, must be interpreted, and we must decide how the gains and profits resulting from a sale of the trust corpus in 1928 are affected by the cited provisions of the Revenue Act of 1928.

Perry on Trusts, Vol. I, par. 268, says:

If a person has once accepted the office of Trustee either expressly or by implication, it is conclusive; and he cannot afterwards by disclaimer or renunciation, avoid its duties and responsibilities. And the reason is that, if the estate has once vested in the Trustee it cannot be divested by a mere disclaimer, or renunciation, nor can he convey the estate against the consent of the *cestui que* trust without committing a breach of trust, *unless the instrument creating the trust gives him that power * * *. In such case the Trustee may resign the trust, and convey the estate in the manner pointed out in the instrument creating the trust, if it speaks upon that subject.* [Italics supplied.]

In the instant case the trust instrument does speak upon the subject. The trust instrument shows that the trustee, when accepting the trust, specifically provided that it " hereby reserves unto itself the right and power to revoke and dissolve the same *at any time* upon giving ten days written notice of its intention so to do to Valentine Bliss during his lifetime, etc."

We therefore conclude that the trust instrument was one in which the power to revoke was vested solely in the trustee; that as to the grantor, it was irrevocable, and that the income to the trustee resulting from a sale of the corpus in 1928 was not income to petitioner as the grantor of a revocable trust within the meaning of section 166 of the Revenue Act of 1928.

Section 167 of the Revenue Act of 1928 is not applicable, because the gains and profits resulting from the sale of the trust corpus in 1928 were by the express terms of the trust not distributable to the petitioner, but were to be added by the trustee to the trust corpus. Petitioner admits that the dividends received by the trustee from the corporate stock in 1928 were taxable to him because distributable to him.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

---

SEAWELL, dissenting: The trust instrument here under consideration provided that it should be irrevocable by the grantor, but that the trustee " hereby reserves unto itself the right and power to

revoke * * * upon giving ten days written notice of its intention so to do " to the grantor. The word " reserves " means to keep back or withhold; to exclude something from that which is granted. Certainly the trustee, the bank, had no power of revocation of the trust here involved except as the grantor therein gave it the power. Upon what imaginable reason could the trustee be interested in revocation? If it desired to be relieved of its duties, it could resign its trusteeship without the revocation of the trust.

The grantor was a stockholder, a director and the president of the trustee. If at any time the grantor should desire a revocation of the trust it may reasonably be inferred that a word or intimation from him as maker of the trust to himself as president of the trustee would receive prompt audition and be considered by the trustee as nothing less than a command. To make the income taxable to the grantor the statute requires power lodged in some one, not a beneficiary, and the grantor (where the grantor has not the power alone) " in conjunction " to revest the title in the grantor. In the trust instrument this power is lodged in (1) the bank (the trustee) which is not a beneficiary, and (2) the grantor. The trustee can not revoke without giving written notice to the grantor. The manner of " giving written notice " is not provided for, and it must therefore be by the usual legal method, unless the grantor will accept the service in some other way. The grantor must, therefore, act in a negative, if not in a positive, manner. The power to revoke the instrument and revest the property in the grantor is present in the two, to wit, the bank and Valentine Bliss. The statute does not require, necessarily, positive action of both parties in which the power resides. The power to revest may be by the action of either, provided it is " in conjunction " with the other.

Moreover, the determination of the Commissioner is presumed to be correct. In this case the petitioner has not attempted, but has failed, to negative that which appears quite evident, to wit, that this peculiar power to revoke the trust instrument is given to one who is in fact the agent and tool of the grantor, and who is purposely designated in the instrument to provide facilities whereby the grantor might be enabled to avoid tax.